Richards, J.
This action is brought by the executors for the purpose of obtaining the direction and judgment of the court as to the true construction of the will of Joseph L. Wolcott, deceased. There are in the case a very large number of defendants and they include all persons who are, or claim to be, beneficiaries under the will and codicil. On the trial of the action in the court of common pleas a decree was rendered, adjudging that the beneficiaries under the codicil were the brothers and sisters of the mother of the testator, and the descendants of such brothers and sisters. From this decree an appeal was taken by the plaintiffs and by Mary L. Wolcott, the widow. The controlling facts are not in dispute; but, be *8 fore proceeding to the merits of the case, it is proper to dispose of some preliminary questions raised by counsel.
Certain of the defendants contend that the executors are not authorized by law to bring an action for the purpose of obtaining a construction of this will and the codicils thereto, and that the action is prematurely brought. They insist that such action can not be maintained during the lifetime of the widow of Joseph L. Wolcott. The record shows that the debts of the estate have been fully paid and that the executors have on hand and under their control a large estate, consisting of non-ancestral property, and aggregating probably more than half a million dollars, and that it is necessary for the court to fix and adjudge the true construction to be placed on this will before the executors can properly conclude the administration of the trust reposed in them and make distribution of the estate; and no sufficient reason is perceived why this adjudication can not be had during the lifetime of the widow. Furthermore, the widow contends that she is entitled to the estate in fee, while other defendants claim interests therein. If her claim prevails, no duty to pay a collateral inheritance tax under Section 5331, General Code, is imposed on the executors; while, if the claims asserted by other defendants should prevail, such duty rests on them. We hold that the action is maintainable alike under the provisions of Section 10857, General Code, and under the general principles of equity jurisprudence.
It is further insisted that the action is one which can not be appealed to this court. Long before the *9 passage of the original statute, now known as Section 10857, General Code, courts of chancery were called on to, and did, adjudicate cases calling for the construction of wills, and the section cited is only declaratory of that early practice. Indeed, the statute itself provides for the remedy “as fully as formerly was- entertained in courts of equity.” We hold, therefore, that the action is one which may properly be brought into this court by appeal.
We reach, therefore, the merits of'the case, and are required to place a construction on the will and codicils left by Joseph L. Wolcott and to determine who are the beneficiaries thereunder. The will bears date of July 10, 1891, and makes a bequest of $5,000, which is not in dispute, and gives all the remainder of his property, after the payment of his debts, to his widow, Mary Louise Wolcott, and names her as one of the executors of his will. On December 11, 1899, Joseph L. Wolcott added a first codicil to his will, which codicil, omitting the execution, reads as follows:
“Whereas I Joseph L. Wolcott of Toledo Ohio did on the 10th day of July in the year 1891, make my last will and testament as of that day I do hereby declare the following to be a codicil to the same. After the payment of all my just and lawful debts I do hereby give and bequeath to my wife, Mary L. Wolcott for her use, for and during the term of her natural life, all my property real personal and mixed of whatsoever character and wheresoever located it being my intention thereby to insure to her the income of and from my property as aforesaid during her natural life,
*10 “At the death of my said wife all of said property as aforesaid I give and devise absolutely to the heirs óf my mother Caroline B. Cromack the same to go to said heirs per stirpes.”
On August 11, 1900, he made a second codicil, revoking the previous appointment of executors and appointing the plaintiffs in this action as executors of his last will and testament. The entire controversy in this action centers around the following language contained in the first codicil: “At the death of my said wife all of said property as aforesaid I give and devise absolutely to the heirs of my mother Caroline B. Cromack the same to go to said heirs per stirpes.”
As stated in the brief of counsel for plaintiffs, the precise question involved is, Who are the heirs of Caroline B. Cromack within the meaning of this provision in the first codicil? Before reaching a solution of this question it is necessary to consider not only the language used by the testator in his will and codicil, but his situation at the time of their execution. The terms of the codicil are such, that, before any construction can be given them, the practical necessity arises of ascertaining such facts as will place the court in the position of the testator.
As has been said, the first codicil was executed on December 11, 1899. The testator, Joseph L. Wolcott, died on December 1, 1900, leaving surviving him his widow, Mary L. Wolcott, but no lineal descendants, he never having had issue born to him. He did leave, however, surviving him, one half-brother, and the descendants of other half-brothers and half-sisters, the half-brothers and *11 half-sisters being the children of his father by a former wife. The widow, Mary L. Wolcott, duly elected to take under the will. The facts necessary to put the court in the situation of the testator at the time of the execution of this codicil are as follows:
Caroline B. Cromack, his mother, died in 1884. Her will was duly admitted to probate and in this will she referred to “my adopted daughter Carrie, Davis Clark,” and named her as one of her beneficiaries, but there is no evidence that Carrie Davis Clark was ever legally adopted as a daughter of Mrs. Cromack. Joseph L. Wolcott was the only child ever born to Caroline B. Cromack, and he and his .mother’s second husband,' Joseph C. Cromack, survived her. Joseph C. Cromack died about May 12, 1900, after the execution of the first codicil, but before the testator’s death. Car- ■ oline B. Cromack was also survived by a brother and sister, both of whom died in 1885, and also by the lineal descendants of three other brothers and three other sisters. These last named brothers and sisters died prior to her death. While there are a large number of defendants,' probably more than one hundred, claiming interests in the estate, they may all be grouped into four classes, as is so well and concisely done in the brief of counsel for plaintiffs. These four classes of claimants, as there.set forth, are the following:
(a) Descendants of Joseph C. Cromack, surviving husband of Caroline B. Cromack, deceased.
(b) Descendants of Carrie Davis Clark, the alleged adopted daughter of Caroline B. Cromack, deceased.
*12 (c) Descendants of the brothers and sisters of Caroline B. Cromack, deceased.
(d) Descendants of the half-brothers and half-sisters of Joseph L. Wolcott.
With these facts established, the court is, in a large measure, able to place itself in the situation of Joseph L. Wolcott when he executed his first codicil on December 11, 1899, and from that vantage point to determine the beneficiaries he meant to include when he employed in his first codicil the following language:
“At the death of my said wife all of said property as aforesaid I give and devise absolutely to the heirs of my mother Caroline B. Cromack the same to go to said heirs per stirpes.”
The most patent fact which at once suggests itself is that he himself was the only heir of his mother, but, of course, it is unthinkable that he meant to will his property to himself under the designation of heir of his mother. Neither the language of the codicil nor the circumstances surrounding the testator point to the conclusion that he meant his estate to go to his stepfather, Joseph C. Cromack. If Joseph C. Cromack had been intended, the expression “per stirpes” would not have been used, and the natural method would have been to designate Joseph C. Cromack by name. Furthermore, the share, at least in the real estate, which Joseph C. Cromack would take as husband of Caroline B. Cromack, he would not take .as heir. Clearly we must look elsewhere to ascertain the persons intended by the testator in the use of the expression “heirs of my mother * . * * per stirpes.”
*13 The argument is made, and has much force, that the heirs of his mother were fixed and determined at the date of her death, which was in 1884, more than fifteen years before the first codicil was made. The rule is one of the most ancient known to the law, but it is equally well settled that the word “heirs,” when used in wills, is a word which is flexible, and has often been held by the courts to have been used in a sense other than in its strict technical meaning. A good illustration of such use of the word “heirs” may be found in Jones v. Lloyd, 33 Ohio St., 572; but such holdings -have been so frequently made that it is unnecessary to cite other cases illustrating the proposition. We have to determine, from the language used by the testator and from the circumstances surrounding him, in what sense he used it. He knew that his will would not take effect until his death, and that it would speak from a time subsequent to its date. It would therefore be, until his death, ambulatory.
It is clear then, when Joseph L. Wolcott referred in his will to the heirs óf his mother as the ones who should succeed to his estate, he meant those who were such heirs at the time his will' should take effect. He was the one whose estate was being disposed of and that disposition could only become effective at his death. That was the important date he had in mind in making his will, and those who were then the heirs of his mother were to be the recipients of his bounty and should receive his estate, postponing the time of enjoyment thereof for such time as his widow', who was given a life estate, should survive him. This, we think to be *14 the fair intent and meaning of the language he used, under the circumstances and in the situation in which he was placed at the time he signed the first codicil to his will. The result would follow that the remainder of his estate, after the interest given to his widow in this codicil, would pass to and vest in the descendants of the brothers and sisters of his mother, per stirpes. Such persons would be those who were his mother’s heirs at the time the will became effective. They would be her next of kin and the descendants of such next of kin.
It may .be noted that the first will gave to the widow his entire estate absolutely, excepting a minor bequest. The evident purpose of making the first codicil was to’ revoke that portion of the will, and to give her, in lieu thereof, the estate named in- this codicil, and the right was taken from her in a later codicil to be one of the executors of the estate. In the light of these facts, it is apparent that she is not given any greater rights than those specifically provided in the first codicil. The important limitation on her estate, therein mentioned, manifests an intent, a failure to follow which would amount to making a will for the testator. • In view of the manifest purpose of the testator, on the date of the first codicil, to make a codicil which should dispose of his entire estate, and in view of the fact that his mother had heirs, we can not reach a conclusion, as contended for by plaintiffs, that the devises intended for those heirs lapsed and that the widow would succeed to the estate as his heir. Neither can we find that the *15 codicil is of such doubtful import as to be invalid. On the contrary, a majority of the court are of the opinion that the entire estate which the widow receivés under the will is that, and that only, which is specifically provided for her in the language of this first codicil, and that Joseph L. Wolcott did not die intestate as to any portion of his property. We reach this conclusion the more readily in view of the well-known presumption against intestacy where a will is executed evidently with an intent to dispose of the entire estate.
In view of this decision, that the widow does not receive the entire estate, it becomes important to decide another question raised on the record. The petition sets out that the testator was the owner at his death of five hundred and one shares of the capital stock of The National Supply Company, of the par value of one hundred dollars each, which stock was then of the actual value of two hundred and fifteen dollars per share. On this stock large dividends have been paid since the death of the testator, some of them in cash and some in stock, the dividends aggregating perhaps eighty thousands dollars or more. A portion of this stock was used in the payment of debts of the estate, and the executors are in doubt and ask the opinion of the court as to what disposition to make of certain of these dividends. Under the facts and circumstances existing in this case, and upon an examination of • the authorities cited by counsel, the court, holds that the widow is entitled to receive all of the dividends declared and paid, whether in stock or cash,‘provided that the original *16 actual value of the stock remaining, after such portion as was legitimately used, in the payment of debts, shall not be depleted by stock dividends, below the actual value, at the time of the death of the testator, of the stock not used in the payment of debts.
The petition of the executors asks the instructions of the court with regard to the delivery of the estate in their hands. Having determined that the widow is entitled to the estate for her use during the term of her natural life, it being the intention of the testator according to the language of the codicil thereby to insure to her the income from the property during her life, we know of no sufficient reason why the executors, upon filing their final accounts and having the same approved, should not turn the entire estate over to her to hold under and pursuant to the right given her by the language of this codicil. The evidence does not disclose danger or insecurity to the remaindermen if this be done without bond. The rules applicable under such circumstances seem to be clearly stated in 16 Cyc., 641, and are°, in substance, that, in the absence of a showing of actual danger, an inventory is the only protection to which a remainder-man is entitled, and that the tenant for life of personal property is usually entitled to' its possession without giving security for the forthcoming of the property at the termination of the life estate. If, however, the widow should so desire, the court will allow the continuance in office of the plaintiffs, as trustees, they being the ones designated in the last codicil of the testator.
*17 A decree may be drawn in accordance with the views expressed in -this opinion.

Judgment accordingly.

Chittenden, J., concurs.