In re Estate of Miller: Brandon, Appellant, *v.*
The City National Bank & Trust Co. et al.,
Exrs., et al., Appellees.

458

(No. 4847—Decided March 20, 1953.)

*Mr. Bruce A. Lowman* and *Mr. Robert E. Patterson,* for appellant.

*Mr. Webb I. Vorys,* for appellees Edward W. Miller and Betty E. Miller, executors.

*Messrs. Key, Butler & Harrison,* for appellee Roberta M. Hammond.

*Mr. John H. Summers,* for appellees Joseph W. Brandon and Richard M. Brandon.

*Mr. Harrison W. Smith* and *Mr. Ithamar D. Weed,* for appellees Betty Ann Miller, Patricia Joan Miller and Nancy Louise Miller.

WISEMAN, P. J. This is an appeal on questions of law from a judgment of the Probate Court of Franklin County.

The testator, Frederick A. Miller, bequeathed the residue of his estate in shares to his wife, his son, and his daughter, Frances Ann Miller, for life. The widow having elected to take under the law, the share of the daughter amounted to one-third of the assets available for distribution, and was of the approximate value of $450,000. The testator directed that at the death of his daughter, the share bequeathed to her for life should be divided among her children or their issue in fee simple.

The administration of the estate nearing completion, the daughter filed an application for distribution of her share. The executors instituted a proceeding in the nature of an action for a declaratory judgment.

concerning matters affecting distribution. The two proceedings were consolidated and evidence was presented. The order from which this appeal was taken directed that the daughter's share was to be paid by the executors to a trustee, to be held and managed for the benefit of the daughter during her life and to be distributed to the remaindermen at her death. From this order, the daughter took this appeal.

The order of the Probate Court was based on its findings of fact and conclusions of law, which are incorporated in the order. No bill of exceptions has been filed. The trial court found that the testator, Frederick A. Miller, died in 1948, at which time the daughter was indebted to the decedent in the sum of $58,620.64; that in 1945, she received cash and stock of the value of $215,323.58 from the estate of her grandfather; that the daughter and her husband received other moneys during the five succeeding years; that the total amount received from 1945 to 1950 aggregated $453,866.95; and that an itemized statement filed with the court by the daughter as of January 1, 1951, together with her testimony, shows that as of that date the net value of her estate was $41,524. This amount did not include the above mentioned indebtedness to the instant estate. In 1945, the daughter moved with her family to the state of California, where she has since resided and where she intends to maintain a permanent domicile. The trial court found that in February or the early part of March 1948 the testator learned of the financial situation of the daughter, and that, thereafter, the testator contemplated making a change in his will, which was never consummated, the testator having been stricken with illness on March 22, 1948, from which he died on May 6, 1948.

Thus, it appears from the findings of fact that the appellant (daughter) within a few years consumed the inheritance which she received from her grandfather's

estate, and, also, approximately $102,000 paid to her during the years 1948, 1949 and 1950, as income from her father's estate as well as other moneys, the total amount aggregating over $470,000, and that on the date of her father's death she was insolvent.

On the basis of this factual situation, the trial court concluded:

"Frances Ann Miller Brandon has not demonstrated her ability to handle an estate of the character and size of which she is the life beneficiary, but on the contrary has demonstrated her inability to handle an estate of such size as life tenant; and delivery of possession to her of her share as life tenant would imperil the integrity of that share and result in severe, if not total, loss to the minor remaindermen and severe injury to the life tenant.

"The court therefore concludes that, in the exercise of its plenary power and duties in respect to the administration and distribution of this estate, the competency of the life tenant of each share must be considered in order to safeguard all interests created by the decedent's will; and with that obligation it has a responsibility to the minor remaindermen and contingent remaindermen to safeguard the corpus of the shares to the life tenants until the delivery of each share of corpus to the ultimate beneficiaries.

"The court further concludes that the application of Frances Ann Miller Brandon for immediate delivery to her as life tenant of her share of the decedent's estate should be denied; and, in the exercise of the court's plenary power, in order to safeguard the corpus of the estate devised to the children and issue of Frances Ann Miller Brandon until the date of its delivery to them, and in order to protect their interests, the corpus of the estate in which Frances Ann Miller Brandon has an interest as life tenant should be distributed by the executors to a trustee, for the benefit

of Frances Ann Miller Brandon during her life and the persons who will be entitled to the ownership thereof at her death."

The court decreed and ordered as follows:

"It is therefore decreed and ordered that the application of Frances Ann Miller Brandon for an order directing immediate distribution and delivery to her of such part of the estate assets to which she is entitled to possession as life tenant be, and the same is hereby, denied * * * and that the City National Bank and Trust Company of Columbus be and it is hereby appointed trustee to receive from the executors of the estate of Frederick A. Miller, deceased, the share of said decedent's estate bequeathed to Frances Ann Miller Brandon for her life and at her death to her issue * * * ."

In her assignments of error, appellant claims that the Probate Court erred (1) in ordering appellant's share as life tenant placed in the hands of a court-appointed trustee; (2) in ordering that the rights, powers and privileges granted appellant as life tenant under decedent's will be vested in a court-appointed trustee; and (3) in construing provisions in the will affecting the rights of the appellant to be precatory and not mandatory and by preferring the interest of the remaindermen over the interest of the life tenant.

The appellant contends that the provisions of the will should be followed; that the Probate Court did not possess plenary power to make the order; and that the provisions of Section 10509-185, General Code, control the manner of making distribution to a life tenant.

In item III of the will, the testator provided that the appellant, as a life tenant, should have full power and authority to manage, control, invest and reinvest, sell, convey and exchange property held by her as life tenant and to exercise other beneficial rights as she may

deem proper, "notwithstanding any statute or rule of law or equity to the contrary."

Item III provides further:

"It being my intention to facilitate the use of such shares by the respective life tenants thereof, *I direct that my property shall not be held by my executors or by any trustee or trustees for the benefit of any life tenant*, but that my executors shall deliver to the respective life tenants aforesaid the property which is allocated to their shares and the executors shall thereupon be relieved of all liability for the property so delivered *and the court shall not have authority to direct otherwise*." (Emphasis ours.)

In view of the findings of fact and the provisions of the will, did the Probate Court have jurisdiction to make the order? Finding no reported case in Ohio touching this precise question, it becomes one of first impression.

The jurisdiction of the Probate Court is conferred in part by the Constitution and in part by the statute. In the matter presented here, the jurisdiction of the Probate Court is conferred by the Constitution as well as by the statute.

Section 8, Article IV of the Ohio Constitution provides:

"The Probate Court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators, and guardians * * *."

It has been held that the power conferred on the Probate Court by the above-quoted provision of the Constitution is plenary.

In *Trumpler, Admr., v. Royer*, 95 Ohio St., 194, 115 N. E., 1018, the first paragraph of the syllabus is as follows:

"By the provisions of Section 8, Article IV, Consti-

tution, and Section 10492, General Code, plenary jurisdiction is conferred on the Probate Court to grant and revoke letters testamentary and of administration, to direct and control the conduct, and settle the accounts of executors and administrators, and order the distribution of estates.''

Section 10492, General Code, referred to therein is now Section 10501-53, General Code.

In the case of *In re Estate of Shafer,* 77 Ohio App., 105, 65 N. E. (2d), 902, the court, on page 108, said:

''By the provisions of Section 8, Article IV of the Constitution of Ohio, jurisdiction in probate and testamentary matters and in the settlement of accounts of executors and administrators is conferred upon the Probate Court. By virtue of the constitutional provisions conferring such jurisdiction, the Probate Court has plenary power fully to dispose of any of those matters properly before the court, and such power comprehends the power to adopt and apply such remedies, legal or equitable, as may be suitable for such purpose. Insofar as these matters are concerned, Section 10501-53, General Code, prescribing that the Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is otherwise limited or denied by statute, *adds nothing to the jurisdiction of the court.''* (Emphasis ours.)

The court held further that the procedure of the court in the exercise of its jurisdiction may be prescribed by statute, but that the jurisdiction prescribed by the Constitution cannot be enlarged or diminished by statute.

In *Union Savings Bank & Trust Co., Exr.,* v. *Western Union Telegraph Co.,* 79 Ohio St., 89, 86 N. E., 478, 128 Am. St. Rep., 675, the court, on page 99, said:

''The Probate Court is a court of record and its jurisdiction in matters testamentary and in the ap-

pointment of administrators and guardians has been broadly given by the Constitution of this state, Article IV, Sections 7 and 8. The jurisdiction is plenary and it may well be doubted whether the Legislature, if it chose to do so, could in any respect limit it.''

In the case of *In re Guardianship of Zimmerman et al., Minors,* 141 Ohio St., 207, 47 N. E. (2d), 782, the court, on page 219, quoted with approval the quotation just given from the *Union Savings Bank & Trust Co., case.*

It is axiomatic that the plenary jurisdiction conferred on the Probate Court by the Constitution may be implemented by legislation, but it cannot be abridged or limited by legislative enactment. In the enactment of Section 10501-53, General Code, the Legislature extended the plenary power to matters where the jurisdiction is derived by statute by providing in the last paragraph of this section as follows:

''The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute.''

We agree with the statement of Judge Guernsey in the case of *In re Estate of Shafer, supra,* where, in commenting on the effect of this provision in view of the power conferred by the Constitution, he said that this provision ''adds nothing to the jurisdiction of the court.'' Plenary power is full and complete power— an unlimited power. The trial court found that it possessed plenary power in this matter and proceeded to exercise it.

The appellant contends that the plenary power exercised by the trial court was derived from the last paragraph of Section 10501-53, General Code, which confers on the Probate Court ''plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise lim-

ited or denied by statute.'' The point is made that the provisions of Section 10509-185, General Code, expressly limit the power of the Probate Court, in that they prescribe the manner of making distribution to a life tenant. However, we are concerned here primarily with the exercise of the plenary power conferred by the Constitution, which cannot be abridged or limited by statute. We might well rest our opinion on the fact that plenary power is conferred on the Probate Court by the Constitution, but since counsel have briefed extensively the question of the application of the provisions of Section 10509-185, General Code, to the issues presented, we proceed to discuss in some detail the effect of that statute.

That section provides as follows:

''When by a last will and testament the use or income of personal property is given to a person for a term of years or for life, and some other person has an interest in such property as remainderman, the court, unless such last will and testament otherwise provides, shall have authority to deliver such personal property to the person having the limited estate, with or without bond, as the court may determine; or the court may in its discretion order that such property be held by the executor or some other trustee, with or without bond, for the benefit of the person having the limited estate. If bond is required of the person having the limited estate, or of the trustee, it may be increased or decreased, and if bond is not required in the first instance it may be required, at any time prior to the termination of the limited estate, at the discretion of the court.''

The purpose of this section is to protect the interests of the remaindermen. In the first clause, authority is given to the court to deliver the property to the life tenant, unless the will otherwise provides. The implication is that if the will provides that the property

shall be delivered to someone other than the life tenant, the court shall follow the provision of the will. This construction is in accord with the general purpose of the statute to protect the remaindermen. But the appellant contends that under this section, where the will provides that the property shall be delivered to the life tenant as distinguished from some other person, there is a mandatory duty imposed on the court to follow the will in every case and under any and all circumstances.

We find no such mandatory provision in the statute.

The statute by its terms is permissive in character and not mandatory. In the second clause of this section, it is provided that "the court may in its discretion order that such property be held by the executor or some other trustee, with or without bond, for the benefit of the person having the limited estate."

Appellant contends that the phrase, "unless such last will and testament otherwise provides," contained in the first clause, modifies the second clause, and that the second clause should be construed as if it read "or the court, *unless such last will and testament otherwise provides*, may in its discretion order that such property be held by the executor or some other trustee, etc."

We are of the opinion that it was not the intention of the Legislature in enacting this section that the words, "unless such last will and testament otherwise provides," as used in the first clause, should modify the second clause also. If this were the intention of the Legislature, this section would have been worded and punctuated differently. It is very clear that in the second clause the Legislature intended to protect the assets for the remaindermen and that in the exercise of a sound discretion, the court in a proper case may order the assets distributed to a trustee. No limitation is imposed on the court in the exercise of

its discretion. The statute recognizes the plenary power of the court. The second clause manifestly applies to situations which are not embraced in the first clause of the section. The second clause is a complete sentence, having a subject, a verb and an object. The clauses are separated by a semicolon.

Webster's New International Dictionary (2 Ed.) says that the purpose of a semicolon is:

"(1) To mark antitheses between the ideas of major sentence divisions. (2) To effect transition between main clauses when lacking a connective and when succeeding each other in a swiftly moving passage. (3) Typically, to introduce a second main clause when the connective is *also, hence, nevertheless, therefore,* and the like. (4) To mark the larger breaks in a series, etc."

In the same dictionary, the word, "or," is defined as follows:

"A coordinating particle that marks an alternative; as, 'you may do one but not both.' Specific uses are to indicate a substitution."

The grammatical rule that clauses separated by a semicolon should be related in thought but must be independent, in that each clause is complete by itself, is satisfied.

The comment of the Probate Code Committee, which proposed Section 10509-185, General Code, is found in Addams and Hosford's Ohio Probate Practice (3 Ed.), page 1053, in the footnotes to that section, and is as follows:

"This was an entirely new section, effective January 1, 1932. It supplements two others which relate to real property only and which protect remaindermen in case waste is committed by a life tenant; G. C. 10502-7 concerns waste by life tenants in dower, and G. C. 10503-23 concerns waste by life tenants. With the increasing popularity of investment in securities rather than in

real property, a need has arisen for protection of the remainderman's interest in personal estates against waste by a person receiving the use or income for life from such estates, and this statute should provide the court with power to deal fairly in all cases which may arise. It will be noted that the statute provides an exception to the court's interference when the testator has made provision or specified conditions concerning the life estate in his will which precludes the court from requiring bond of the life tenant. The Probate Court is given broad powers by this statute, to be exercised within its discretion after hearing, undoubtedly, all persons concerned and their evidence."

It is interesting to note the comment which was made by the Probate Code Committee in the Ohio State Bar Association Report under date of November 17, 1931, found in 4 Ohio Bar, No. 34, page 413, which is as follows:

"When a will creates an estate for life or for years, in personal property, the court is given discretion to deliver such personal property to the person having the limited estate, either with or without bond as the court may determine, or the court may in its discretion appoint a trustee with or without bond to hold the property. In this way the interest of the remainderman is taken care of, in whatever manner the court considers necessary under the circumstances of the individual case."

The intent of the Probate Code Committee becomes the intent of the Legislature.

In our opinion, this section contains two distinct remedies which the court may apply in a proper case in protecting the remaindermen. The first clause applies generally to situations where the court has nothing before it except the provisions of the will; no special circumstances appear showing the property to be in jeopardy. The first clause is in accord with

the great weight of common-law authority. The second clause applies to an entirely different situation. It applies specifically where it is made to appear upon hearing that the property is in danger of being lost, and in such case the statute requires the court to exercise its discretion in the premises. In such matters, the court may exercise a broad discretion. Hence, the reason for the omission of the words, "unless such last will and testament otherwise provides," is readily apparent. The insertion of these words, or to construe this clause as if these words modified the clause, would operate to deny the authority of the court to exercise the discretion conferred.

In our opinion, the provisions of this section do not operate as a limitation on the plenary power conferred on the Probate Court by the Constitution or the last paragraph of Section 10501-53, General Code. However, we do not rest our opinion solely on the authority of the Probate Court to appoint a trustee under the provisions of Section 10509-185, General Code, but rather on the plenary power conferred on the Probate Court by the Constitution.

We come now to consider whether the court, in the exercise of the power conferred, also exercised a sound judicial discretion, in view of the factual situation and the provisions of the will. No reported case in Ohio has been cited as a precedent. In support of her contention that the court may not refuse to distribute the property to the life tenant, the appellant cites *Martin* v. *Lapham*, 38 Ohio St., 538. . In that case the syllabus, in part, is as follows:

"*Held*: 1. That, under the will, M. L. is entitled to the possession of the legacy, without giving security for the repayment thereof, *in the absence of facts showing that she is about to waste or squander the legacy.* 2. Such inference will not arise from the mere fact that she and her husband are residents of another

state, and are pecuniarily irresponsible.'' (Emphasis ours.)

On page 542, *ibid.*, the court said:

''We do not deny that equity will protect this right, shadowy though it be, *and will not permit the legatee to be guilty of waste or other acts which might operate to defraud the plaintiffs. But no such thing is alleged* against her here. It surely does not follow from the fact that she is insolvent, and a resident of another state, that, therefore, she is about to waste or squander her legacy.'' (Emphasis ours.)

*Martin* v. *Lapham* was decided in 1883, before the passage of the Married Women's Act, and the court, on page 542, in discussing this phase of the case found that the fact of the legatee's insolvency would not jeopardize the legacy, for the reason that at that time a married woman could not contract debts which she would be unable to pay. The factual situation in that case was entirely different from the factual situation in the case at bar.

Appellant cites also the case of *Ohio Savings Bank & Trust Co. et al., Exrs.,* v. *Clark,* 7 Ohio App., 6, the fifth paragraph of the syllabus of which is as follows:

''It is the duty of the executors to deliver the entire estate to the widow on the settlement of their final accounts, without security from her, *in the absence of evidence showing that the rights of the remaindermen will be imperiled thereby.*'' (Emphasis ours.)

The court, on page 16, *ibid.*, said:

''The petition of the executors asks the instructions of the court with regard to the delivery of the estate in their hands. Having determined that the widow is entitled to the estate for her use during the term of her natural life, it being the intention of the testator according to the language of the codicil thereby to insure to her the income from the property during her life, we know of no sufficient reason why the executors, upon

filing their final accounts and having the same approved, should not turn the entire estate over to her to hold under and pursuant to the right given her by the language of this codicil. *The evidence does not disclose danger or insecurity to the remaindermen if this be done without bond.*" (Emphasis ours.)

In that case there was no factual situation presented showing the improvidence and spendthrift tendencies on the part of the life tenant such as is presented in the instant case. We find in these decisions little support for the contention of the appellant. On the other hand, we find some support for the authority of the court to refuse to distribute the property to the life tenant under the facts presented. In *Martin* v. *Lapham, supra,* it is inferred that where it is shown that the life tenant is "about to waste, squander the legacy," distribution to the life tenant would not be made unless security would be given. In the *Clark case, supra,* the court indicated that if the evidence had disclosed "danger or insecurity to the remaindermen," a different order would have been made.

The appellant cites the case of *In re Trust of Labold,* 148 Ohio St., 332, 74 N. E. (2d), 251. That case is distinguishable from the case at bar as indicated by the words of the court found on page 341, as follows:

"The Probate Court, while it has broad discretionary powers, cannot without sound reason go directly against the expressed wishes of a settlor. Here, for no sound reason, the Probate Court acted on its own motion without proper hearing and without consulting the person who the settlor had said should designate the person to succeed him."

In other jurisdictions, the only case found which bears some similarity to the case at bar is *Frye* v. *Community Chest of Birmingham and Jefferson County,* 241 Ala., 591, 4 So. (2d), 140, where the will devised one-third of the residue and the income therefrom to

the testator's sister, as trustee without bond, for her use during her life and after her death to be divided equally between testator's nephews and nieces who survived her. The executor filed a bill in equity, seeking to determine certain matters with respect to the administration and distribution of the estate. The estate passing to the life tenant consisted of personalty. The life tenant was an elderly woman and a nonresident of the state. The court held that the estate passing to the sister was a life estate. In discussing the relationship existing between the life tenant and the remaindermen, the court, on page 600, said:

"A life tenant of personalty has, as [a] matter of law, a trust relation toward the remaindermen or reversioners in the preservation of the corpus or principal of the estate."

With respect to the factual situation presented, the court, on page 601, *ibid.*, said:

"The fund, by this decree, is to be turned over to an elderly lady, in a foreign state in the form of money. The safe investment of money to yield a substantial income, as well as payment of the principal, is a decided responsibility; one more difficult now than in 1923. Mrs. Warriner, apart from her age, does not appear to be experienced in handling such funds. This trust continues until her death. Identifying the investment, as well as all questions as to her fidelity must be determined after her mouth is closed by death. She is expected to have followed the laws of a state other than that of her residence in making investments, and apportioning principal and income."

On the question of the nonresidence of the life tenant, the court, on page 601, *ibid.*, said:

"Nonresidence, within itself, in the absence of testamentary provisions to the contrary, is generally held to involve such hazard, inconvenience and expense to the remaindermen as to endanger their interests to

such extent that security should be required; or the estate retained under the jurisdiction of the court, and managed by a trustee of the appointment of the court. Restatement of Law of Property, Vol. XX, Sec. 202, 203, d; 33 Am. Jur. pp. 713, 715, Sec. 222, 224; *Jackson v. Jackson, supra.*''

With respect to disregarding the provisions of the will that the life tenant should not be required to give bond, the court, on page 601, *ibid.*, said:

''The court of equity has inherent power under the law of trusts to make such orders touching properties within its jurisdiction as will protect all interests. The directions of a testator, touching bond, an administrative matter, may be disregarded in effectuating the substantive property rights created by the will.''

On affording protection to the remaindermen, the court, on page 601, *ibid.*, said:

''We are of opinion the question of safeguarding the estates of these remaindermen should be determined in advance, not after the property has passed into the keeping of the nonresident tenant for life. Embarrassments to all parties in the latter event can be easily foreseen.''

While the court in that case invoked equity jurisdiction, the rationale of the court is applicable in the case at bar, where the court has exercised its plenary jurisdiction conferred by the Constitution, which is as full and complete as the jurisdiction conferred on a court exercising general equity powers. *Fidelity & Deposit Co.* v. *Wolfe et al., Trustees,* 100 Ohio St., 332, 336, 126 N. E., 414; *Abicht, Exr.,* v. *O'Donnell,* 52 Ohio App., 513, 516, 3 N. E. (2d), 993.

The matter of requiring the life tenant to give security is treated at length in 33 American Jurisprudence, 706 *et seq.* After stating that there is a great diversity of opinion in the several jurisdictions, and stating the general rule to be that no security will be

required of the life tenant unless the will requires it, an exception to the general rule, which is applicable here, is stated on page 714, Section 226, *ibid.*, as follows:

"It seems to be settled, however, that where it can be shown that there is a threatened injury to the property, or danger of loss to the remainderman, security will be required of the holder of the life estate. One fact that has frequently been made the basis of an order requiring security of the life tenant has been non-residence of the life tenant. The fact that the life tenant will, in all probability, remove from the state property delivered to him has also been held to warrant exaction of security, and such factor has especial significance when added to such factors as evident hostility toward the remainderman and inefficient handling or mismanagement of the property."

Again, on page 715, Section 228, *ibid.*, it is stated:

"Under this principle, however, if there is danger of waste or injury to the interests of the remainderman, security may be required even though the testator has given the life tenant possession of the funds."

With respect to the right of the court to appoint a trustee to hold the property for the benefit of the life tenant and the remaindermen, which is the situation in the case at bar, the text on page 717, Section 230, *ibid.*, is as follows:

"In cases where a life tenant of personalty is under a duty to furnish security, an alternative safeguard available to the owner of the future interest is the power to require the life tenant to deliver over the property to a trustee appointed by a court of competent jurisdiction in the event the life tenant chooses not to furnish the security. For example, it has been held that a life tenant, under circumstances requiring security, must furnish a bond for the protection of a remainderman before the estate will be delivered to

him, *and in default of such bond, the administrator should apply to the court for the appointment of a trustee to manage the estate. Statutes which require the giving of security also frequently provide in the alternative for appointment of a trustee to take charge of the estate.*

*"The property left in present and future interests may be seized and impounded for the protection of the remainderman. Should the tenant attempt to sell, or in any other mode waste or misuse the property, so as to threaten its destruction, the court may impound it, that is, take it into the hands of the court, by its officer, and give the first taker the profits."* (Emphasis ours.)

In support of the text, the author cites decisions from several jurisdictions, together with 101 A. L. R., 271; and 2 Restatement of the Law of Property, 828, 835, Sections 202, 203. See, also, 23 Ruling Case Law, 582, Section 140.

In the instant case, the trial court was convinced, and rightly so, that if securities of the value of $450,000 were turned over to the appellant, who had no power to consume, but who, under the provisions of the will, could sell and reinvest in her own name without order of court, the assets would very soon be squandered and lost to the remaindermen. The trial court evidently found, and we find, that the relief given to the remaindermen in case of a showing of waste would be entirely inadequate. The remaindermen are the minor children of the appellant. The trial court held that it owed a duty to protect the interest of the remaindermen, and that adequate protection could be afforded only by making an order placing the property in the hands of a trustee. The trial court did not see fit to order the life tenant to give security, the amount of which would have been over half a million dollars. The trial court had a right to presume that under the circumstances the life tenant would be un-

able to furnish security. Where the court finds that the property is in danger of being lost and the life tenant is ordered to give security, and the security is not forthcoming, it has been held that the court has the authority to appoint a trustee to hold and manage the property. 33 American Jurisprudence, 718, Section 230. Under the facts in this case, we hold that it was not essential for the trial court to first order the life tenant to give security before proceeding to appoint the trustee.

Suppose the life tenant resided within the jurisdiction of the court, and the property had been distributed to her, and it was made to appear to the court in a proper proceeding that the life tenant had squandered a substantial part of the property, could it be successfully contended that the court, either under Section 10509-185, General Code, or in the exercise of its plenary jurisdiction conferred by the Constitution, would not have the power and the judicial discretion to impound the property and appoint a trustee to hold and manage such property for the benefit of the life tenant and the remaindermen, even though the provisions of the will expressly provided that the life tenant should hold and manage the property without the intervention of a trustee? We do not think so. The court is not required to wait until an actual loss occurs before it is permitted to exercise its jurisdiction. Once the plenary jurisdiction of the court is found to exist, the exercise of that jurisdiction lies in the field of a broad judicial discretion. We find no support for the appellant's claim that the trial court abused its discretion. When all the factors present in this case are given proper consideration, we are of the opinion that the trial court exercised a sound discretion.

The appellant contends that the intention of the testator in certain particulars is ignored; that his pur-

pose to deliver the assets to the life tenant is thwarted by the court order; that the court must, in every instance, bow to the wishes of the testator; and that the court must refrain from the exercise of its plenary power in deference to the wishes of the testator. There are many instances in the law where the intention of the testator is wholly ignored and some disposition other than that expressed in the will is made of the estate. See Sections 10503-17, 10503-18, 10504-5, 10504-49 and 10504-55, General Code.

A testator does not possess a natural or inalienable right to make a will or distribute his property as he sees fit. Such right has always been subject to legislative control. In paraphrasing a statement taken from the scriptures, we might say: The law giveth and the law taketh away. *Patton* v. *Patton,* 39 Ohio St., 590, 596, 597; *Folsom* v. *Haas,* 9 C. C., 473, 482, 6 C. D., 460; *Hane* v. *Kintner,* 111 Ohio St., 297, 300, 145 N. E., 326; 41 Ohio Jurisprudence, 291, Section 40.

The fact that in his will the testator expressed a desire that the estate be not held by his executor or a trustee is not necessarily binding on the court. In the ordinary case, due recognition would be given to the expressed desire of the testator in such matters; but such provision does not, in a proper case, deprive the court of the right to exercise its plenary power in testamentary matters. The question presented becomes one of administration rather than testamentary intention. The testator is charged with a knowledge of the power of the court in such matters.

In conclusion, we hold that where a nonresident life tenant and nonresident remaindermen have an interest in property to be distributed by executors, and, under the terms of the will, the life tenant is given power to sell, convey, invest and reinvest the property in her own name without order of court, but does not have the

power to consume, and the property to be distributed consists of securities of the value of $450,000, and, upon hearing, it clearly appears that the life tenant will take such property out of the jurisdiction of the court, and the evidence shows that the life tenant has recently squandered a large inheritance, and there is found to be a strong probability that said property will be squandered, and the estate lost to the remaindermen, the Probate Court, in furtherance of the intention of the testator that both the life tenant and remaindermen shall be benefited by the distribution of the property and in order to protect the interest of the remaindermen, may order that the property be distributed to a trustee to be held and controlled under the terms of the will for the benefit of the life tenant, and at her death for distribution to the remaindermen, even though the life tenant under such order is denied the management and control of the property as provided in the will.

In the briefs several matters are discussed which are not assigned as error. We pass only on the errors assigned.

Since we find no error in the record prejudicial to the rights of the appellant, the judgment is affirmed.

*Judgment affirmed.*

MILLER and HORNBECK, JJ., concur.