[Cite as *Gen. Motors, L.L.C. v. AutoSmart Chevrolet, Inc.*, 2024-Ohio-5617.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

General Motors, LLC, :

      Appellant-Appellant, : No. 24AP-239
(C.P.C. No. 23CV-6720)

v. :

                                            (REGULAR CALENDAR)

Autosmart Chevrolet, Inc. et al., :

      Appellees-Appellees. :

---

D E C I S I O N

Rendered on November 26, 2024

---

**On brief:** *Dykema Gossett PLLC*, and *Robert Hugh Ellis*, for appellant.

**On brief:** *Stockamp & Brown, LLC*, *David A. Brown*, and *John C. Camillus* for appellee Autosmart Chevrolet, Inc. **Argued:** *John C. Camillus*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Appellee Autosmart Chevrolet, Inc. ("Autosmart") operates a Chevrolet motor vehicle dealership in Hamler, Ohio. Appellee Mt. Orab Chevrolet, Inc. ("MOC") wanted to purchase the dealership and move it to Mount Orab, Ohio. Appellant General Motors, LLC ("GM") agreed that MOC could buy the dealership but refused to allow MOC to relocate it. Because we conclude the Ohio Motor Vehicle Dealers Board ("the Board") properly held that Autosmart and MOC had a statutory right to protest GM's decision and that GM failed to show good cause for its denial, we affirm the decision of the Franklin County Court of Common Pleas affirming the Board's decision.

## I. Facts and Procedural History

{¶ 2}   Autosmart operates a Chevrolet motor vehicle dealership in the village of Hamler, Ohio, pursuant to a dealer sales and service agreement ("dealer agreement") with GM authorizing Autosmart to sell and service GM's Chevrolet products. In November 2021, Autosmart entered into an asset purchase agreement ("purchase agreement") with Mark Williams, providing for the purchase of the Autosmart dealership. Williams's rights under the purchase agreement subsequently were assigned to MOC. The purchase agreement provided that for 15 months after closing, Autosmart would continue to operate the dealership in Hamler, Ohio, under an independent contractor or management agreement.[1] However, MOC ultimately intended to relocate the dealership to the village of Mount Orab, Ohio. Pursuant to the terms of Autosmart's dealer agreement with GM and state law, Autosmart and MOC submitted the purchase agreement to GM for review and approval.

{¶ 3}   GM responded by letter to MOC stating that it "approves the acquisition of [Autosmart's] assets but does not approve of the relocation to Mt. Orab, OH." (Notice of Protest, Ex. A.) Autosmart and MOC filed a notice of protest with the Board pursuant to R.C. 4517.56, asserting that relocation of the dealership was a condition precedent to the completion of the purchase agreement and that GM's failure to approve the relocation was a denial of the proposed dealership sale.

{¶ 4}   GM moved for summary judgment on the protest, asserting R.C. 4517.56 did not apply because it had not denied the dealership sale. Rather, GM argued, it approved the dealership sale but denied MOC's relocation request. GM argued that Autosmart and MOC had no right to protest the latter decision under R.C. 4517.56 because Ohio law did not impose limitations on a manufacturer's authority to reject a relocation request. Autosmart and MOC also moved for summary judgment on the protest, arguing that by denying the proposed relocation GM constructively denied the dealership sale. They argued that GM lacked good cause to deny the dealership sale because the denial was based solely on the proposed relocation.

{¶ 5}   A Board hearing examiner issued a recommendation that the Board deny GM's motion for summary judgment and grant summary judgment in favor of Autosmart

---

[1] The purchase agreement further provided that the post-closing management agreement could be extended up to three additional months by mutual agreement of the parties.

and MOC, concluding that when the sale of a dealership is conditioned on the relocation of the dealership and the franchisor approves the sale but disapproves the relocation, R.C. 4517.56 requires treating the franchisor's decision as a refusal to approve the sale. The hearing examiner recommended that the protest proceed to a hearing on the question of whether good cause existed to support GM's denial of the sale. After the parties entered a joint stipulation that there were no genuine issues of material fact and no hearing was necessary on the issue of good cause, the hearing examiner recommended the Board enter a final order granting summary judgment in favor of Autosmart and MOC. The Board took no action on the hearing examiner's recommendation within 30 days; therefore, it was approved by operation of law under R.C. 4517.58.

{¶ 6} GM appealed the Board's decision to the Franklin County Court of Common Pleas. The common pleas court affirmed the Board's decision, reasoning that GM constructively denied the dealership sale by denying the proposed relocation:

> It is playing semantics for GM to say that it approves the "sale," but disapproves a material term of the written agreement that defines the "sale." There is no sale to approve if the terms of the Asset Purchase Agreement are ignored.

(Mar. 8, 2024 Decision & Jgmt. Entry at 5-6.) The trial court concluded that GM's constructive denial of the sale was based solely on the proposed relocation, which did not constitute good cause for denial of a sale.

## II. Assignment of Error

{¶ 7} GM appeals and assigns the following sole assignment of error for our review:[2]

> The trial court, acting as the appellate court for a decision of the Ohio Motor Vehicle Dealers Board (the "Board"), erred by affirming the Board's decision to deny General Motors LLC's motion for summary judgment and to grant Autosmart Chevrolet, Inc. and Mt. Orab Chevrolet, Inc.'s cross-motion for

---

[2] GM's counsel did not appear at the oral argument in this appeal held October 1, 2024. On October 18, 2024, GM moved for a rescheduled oral argument, asserting it was unaware of the prior oral argument until October 16, 2024, and only discovered it when checking the online docket for this appeal. GM stated that the failure to attend oral argument was inadvertent, claiming it did not receive or inadvertently misplaced this court's notice of hearing, which was issued on August 28, 2024, and mailed to GM's counsel at the address on file on the same day. This court denied the motion for rescheduled oral argument by journal entry on October 21, 2024.

summary judgment, because that decision was not in accordance with law.

## III. Discussion

### A. Standard of review

{¶ 8} The Board's decision on a protest under R.C. 4517.56 is subject to appeal under R.C. Chapter 119. R.C. 4517.18. In an appeal under R.C. 119.12, the common pleas court reviews the entire record to determine whether the Board's order is supported by reliable, probative, and substantial evidence, and whether the order is in accordance with law. *Frye v. Am. Honda Motor Co.*, 10th Dist. No. 23AP-490, 2024-Ohio-1554, ¶ 25. The common pleas court conducts a hybrid review of the administrative record, appraising the credibility of the witnesses, the probative character of the evidence, and the weight of the evidence. *Id.* at ¶ 26. The common pleas court must give due deference to the Board's resolution of evidentiary conflicts, but the Board's findings are not conclusive. *Id.* On questions of law, the common pleas court conducts a de novo review. *Id.*

{¶ 9} On appeal to this court, we review a common pleas court's determination that the Board's order was supported by reliable, probative, and substantial evidence for abuse of discretion. *Id.* at ¶ 27. However, on the question of whether the Board's order was in accordance with the law, our review is plenary. *Id. See In re Estate of Miller*, 95 Ohio App. 457, 465 (10th Dist.1953) ("Plenary power is full and complete power -- an unlimited power."); *Madigan v. Dollar Bldg. & Loan Co.*, 52 Ohio App. 553, 563 (10th Dist.1935) ("Plenary power has a well defined legal meaning and significance. It means full, entire, complete, absolute."). Therefore, in an appeal under R.C. Chapter 119 we undertake a de novo review of questions of law. *Bryant Health Care Ctr., Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 13AP-263, 2014-Ohio-92, ¶ 24.

{¶ 10} The parties agree there are no disputed issues of fact, and this appeal turns on a question of law–i.e., whether R.C. 4157.56 applies in this case. Accordingly, we conduct a de novo review of that question.

### B. Relevant statutory provisions

{¶ 11} R.C. Chapter 4517 contains provisions governing the relationships between motor vehicle manufacturers (such as GM) and motor vehicle dealers (such as Autosmart) that have entered into a franchise agreement. *See* R.C. 4517.01(V) (defining "franchisee" as

"a person who receives new motor vehicles from the franchisor under a franchise agreement and who offers, sells, and provides service for such new motor vehicles to the general public"); R.C. 4517.01(W) (defining "franchisor" as "a new motor vehicle manufacturer, remanufacturer, or distributor who supplies new motor vehicles under a franchise agreement to a franchisee"); R.C. 4517.50 to 4517.65. As relevant to this appeal, when the sale of a motor vehicle dealership is conditioned on the continuation of a franchise relationship and the prospective buyer is willing to comply with the requirements of the existing franchise agreement, the franchisee-dealer must notify the franchisor-manufacturer of the proposed sale and provide certain information relevant to evaluating the prospective buyer's qualifications. R.C. 4517.56(A). Under R.C. 4517.56(B), the franchisor-manufacturer must provide the franchisee-dealer and the prospective buyer with written notice of "any refusal to approve a sale" within 30 days and must "specify the objective criteria used to evaluate the prospective [buyer] and the criteria which the [buyer] failed to meet." Within 90 days of receiving a notice of refusal, the franchisee-dealer or prospective buyer may file a protest with the Board. R.C. 4517.56(C).

{¶ 12} A franchisor-manufacturer "shall not fail or refuse to approve the sale or transfer of the business and assets * * * after the holding of a hearing on any protest if the board determines that good cause does not exist for the franchisor to fail or refuse to approve such a sale or transfer." R.C. 4517.56(D). In a hearing on the protest, the franchisor-manufacturer bears the burden of establishing that there was good cause for refusing to approve the sale. R.C. 4517.57(C). As relevant to this appeal, "[t]he fact that the proposed transferee proposes to relocate the business of the transferor" does not constitute sufficient good cause for failing to approve a sale or transfer, "provided that the relocation facility meets the franchisor's facility standards." R.C. 4517.56(E)(5).

## C. Analysis

{¶ 13} GM argues R.C. 4517.56 does not apply in this case because it did not refuse to approve the sale of the Autosmart dealership. GM further argues that because the statute does not apply, Autosmart and MOC have no statutory right to protest. GM claims it approved the sale of Autosmart's dealership to MOC, offering MOC the opportunity to become a GM franchisee-dealer, but that it separately refused to allow MOC to relocate the dealership. GM asserts that two-step process was distinguishable from refusing to allow

the sale *because* MOC planned to move the dealership. GM argues R.C. 4517.56 only applies when a franchisor-manufacturer denies a sale and that the statute is silent as to refusal to approve a relocation. GM claims the Board reached the same conclusion in a similar case more than two decades ago, adopting a hearing officer's recommendation that a protest under R.C. 4517.56 be dismissed "because, 'Ohio law provides no remedy,' where the franchisor approves the dealership sale but forbids the franchisee from relocating." *Flynn v. Gen. Motors Corp.*, 7th Dist. No. 02 CO 71, 2003-Ohio-6729, ¶ 5.

{¶ 14} GM further argues that its interpretation of R.C. 4517.56 is consistent with the statutory scheme because the only statutory limitation on a manufacturer's right to control the locations of its dealers arises under R.C. 4517.50. That statute provides for a right of protest and a good cause determination by the Board when a franchisor-manufacturer proposes to establish an additional franchisee-dealer or relocate an existing franchisee-dealer in a market area where the same line-make of motor vehicle is already represented by an existing franchisee-dealer. R.C. 4517.50. GM argues the General Assembly could have, but did not, impose additional statutory limitations on a franchisor-manufacturer's right to control the locations of its franchisee-dealers, and therefore the Board and the courts should not construe R.C. 4517.56 to impose limits on GM's authority to refuse MOC's proposed relocation of the dealership.

{¶ 15} Autosmart and MOC assert that approval of the proposed relocation of the dealership was a material term of the purchase agreement and that denial of the proposed relocation amounted to constructive denial of the sale. Therefore, they argue R.C. 4517.56 applies to this case and affords them a right to protest GM's decision. They further argue that GM's constructive denial of the sale was solely due to the proposed relocation, which does not constitute sufficient good cause to deny a sale pursuant to R.C. 4517.56(E)(5).

{¶ 16} The trial court concluded that the *Flynn* decision cited by GM had no precedential value because the appellate court in that case lacked jurisdiction due to an untimely appeal and did not rule on whether R.C. 4517.56 applied to the facts of the case. We agree with the trial court's conclusion. While *Flynn* appears to establish that two decades ago the Board took the position that R.C. 4517.56 does not apply when a franchisor-manufacturer approves a dealership sale but forbids the relocation of the dealership, *Flynn* does not reveal the reasoning for that position and the Seventh District Court of Appeals

did not reach the merits of the case. Therefore, *Flynn* has no precedential or persuasive value for our present analysis.

{¶ 17} The trial court was persuaded by the reasoning of the United States District Court for the Northern District of Ohio in a memorandum opinion issued in federal litigation arising from the same dispute that led to the *Flynn* case. *See Mercure v. Gen. Motors Corp.*, N.D.Ohio No. 4:02CV2124, 2003 U.S. Dist. LEXIS 28733 (Mar. 17, 2003). In that case, the federal court concluded it would be an absurd result to conclude "that GM may accomplish in two separate acts what it is prohibited by Ohio law from accomplishing in one act." The court further reasoned "[i]t is contrary to the statutory purpose of [R.C. Chapter 4517] as well as the specific language of §4517.56 to allow GM to, by separating the sale and relocation decisions, constructively deny the buy/sell agreement." GM argues the *Mercure* memorandum opinion should not be considered persuasive authority because the federal court later abstained and closed the case without issuing a final appealable order because of the parallel litigation in the *Flynn* case.

{¶ 18} Ultimately, neither *Flynn* nor *Mercure* is binding precedent on this court, and we rely instead on our own review of the facts in this case and the relevant statutory provisions.

{¶ 19} The purchase agreement between Autosmart and MOC stated that the transaction would close within 30 days of MOC's receipt of GM's "written approval of the proposed transaction, approving [MOC] as an authorized dealer and approving the relocation of the Dealership to [the village of] Mt. Orab, Ohio, said approval to be upon terms and conditions reasonably acceptable to [MOC]." (Asset Purchase Agreement.) Based on this language, "approval of the proposed transaction" for purposes of the purchase agreement consisted of both GM's approval of MOC as a GM dealer *and* approval of MOC's proposal to relocate the dealership. The purchase agreement further provided that MOC's obligation to close on the purchase was contingent on approval by GM. Those clauses establish that approval of the proposed relocation was a material term of the purchase agreement, and that completion of the purchase agreement was contingent on GM's approval of the proposed relocation. Therefore, under these circumstances, where approval of the relocation was a necessary term for completion of the sale, denial of the relocation was a constructive denial of the sale.

{¶ 20} Under R.C. 4517.56(C), when a proposed dealership sale is denied, the franchisee-dealer or proposed buyer may file a protest with the Board. A franchisor-manufacturer may not deny a sale if the Board finds there was not good cause for the denial and R.C. 4517.56(E)(5) expressly provides that a proposed relocation does not constitute good cause for denying a sale. Thus, under R.C. 4157.56, GM could not legally deny the sale of the Autosmart dealership to MOC solely because MOC planned to relocate the dealership. Although GM claims it approved the sale and only denied the relocation request in this case, the effect is identical–i.e., the sale will not occur solely because GM refused to allow relocation of the dealership. Moreover, GM does not claim it had any other grounds to deny the proposed sale.[3] Under these circumstances, where the dealership sale was contingent on approval of the relocation, we conclude GM may not avoid the good cause requirement of R.C. 4157.56 by purporting to approve the sale but deny the proposed relocation. Adopting GM's position would render R.C. 4157.56(E)(5) meaningless, because any franchisor-manufacturer wishing to deny a dealership sale because of a proposed relocation could simply follow GM's strategy, nominally approving a sale while denying a relocation that is an essential part of the sale agreement. Therefore, we conclude that R.C. 4517.56 applies in this case and that the Board's decision granting summary judgment in favor of Autosmart and MOC was in accordance with law.

{¶ 21} Our conclusion that R.C. 4517.56 applies to the circumstances presented in this case is also consistent with the principle that remedial laws are to be liberally construed to promote their purposes. R.C. 1.11 ("Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice."); *Barker v. State*, 62 Ohio St.2d 35, 42, (1980) fn. 11 ("[R]emedial provisions are to be liberally construed to promote their purposes."). This court has held that "R.C. Chapter 4517 is remedial in nature." *Lally v. Am. Isuzu Motors, Inc.*, 10th Dist. No. 05AP-1137, 2006-Ohio-3315, ¶ 48, citing *Earl Evans Chevrolet, Inc. v. Gen. Motors Corp.*, 74 Ohio App.3d 266, 276 (11th Dist.1991). *See also Nissan Motor Corp. U.S.A. v. Dever*, 10th Dist. No. 99AP-596 (Mar. 28, 2000) ("A careful reading of R.C. 4517.56 shows that one of

---

[3] In its letter to MOC, GM asserted that the size of the proposed facility in the village of Mt. Orab did not meet GM's minimum facility requirements and that the relocation would place the dealership within the area of geographical sales and service advantage of an existing Chevrolet dealer. However, GM has not argued on appeal that those were valid grounds for its constructive denial of the sale.

the purposes of the statute is to provide protection to franchisees and proposed transferees from arbitrary decisions of franchisors."); *Hal Artz Lincoln-Mercury, Inc. v. Lincoln-Mercury Div., Ford Motor Co.*, 10th Dist. No. 92AP-442, 1992 Ohio App. LEXIS 4888, *9 (Sept. 24, 1992) (holding that attorney fee provision of R.C. 4517.65 "has the remedial purpose of deterring manufacturers from using their vast resources to outspend opponents"). In a case involving the relocation provisions under R.C. 4517.50 and 4517.51, this court addressed the history and purpose of motor vehicle franchise statutes:

> The general history of this type of legislation is well documented. Against a backdrop of abusive and unfair franchise practices by the powerful automobile manufacturing industry, the federal government and many states enacted motor vehicle franchise legislation to protect motor vehicle dealers from such abuses and essentially change the balance of economic power between these enterprises. * * * Consequently, today the discretion of an administrative agency serves as a check upon the power of the automobile manufacturer to dictate the terms of the franchise relation.

*Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 10th Dist. No. 91AP-1493, 1992 Ohio App. LEXIS 4883, *6-7 (Sept. 24, 1992). As explained above, R.C. 4517.56 prohibits a franchisor-manufacturer from denying the sale of a dealership solely because the proposed buyer plans to relocate the dealership. Interpreting R.C. 4517.56 to apply to the present case, where a franchisor-manufacturer constructively denied a sale by denying a proposed relocation that was a necessary element of the purchase agreement is consistent with these remedial purposes of the statute.

{¶ 22} Accordingly, we overrule GM's sole assignment of error.

## IV. Conclusion

{¶ 23} For the foregoing reasons, we overrule GM's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and EDELSTEIN, J., concur.

———————————